2016 IL App (1st) 121365

FIFTH DIVISION
June 30, 2016

No. 1-12-1365

|  |  |  |
|---|---|---|
| AKEEM MANAGO, a Deceased Minor By and through April Pritchett, Mother and Next Friend, | ) ) ) | Appeal from the Circuit Court of Cook County |
|  | ) |  |
| Plaintiff and Petitioner-Appellee, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| THE COUNTY OF COOK, | ) |  |
|  | ) |  |
| Respondent-Appellant | ) | No. 08 L 13211 |
|  | ) |  |
| (April Pritchett, Individually and as Special Administrator for the Estate of Akeem Manago, Plaintiff; Chicago Housing Authority, a Municipal Corporation, and H.J. Russell and Company, | ) ) ) ) ) |  |
|  | ) |  |
| Defendants). | ) ) ) | Honorable Thomas L. Hogan, Judge Presiding. |

PRESIDING JUSTICE REYES delivered the judgment of the court, with opinion
Justice Gordon concurred specially in the judgment, with opinion.
Justice Lampkin dissented, with opinion.

**OPINION**

¶ 1     Respondent the County of Cook (County) appeals an order entered by the circuit court of

Cook County striking, dismissing, and extinguishing a hospital lien arising under the Health Care

Services Lien Act (Act) (770 ILCS 23/1 *et seq.* (West 2004)) for services rendered to plaintiff

Akeem Manago by the John H. Stroger, Jr., Hospital of Cook County (Hospital).[1] On appeal, the County contends the circuit court erred in extinguishing the lien, arguing: (1) it was not required to intervene in plaintiff's personal injury action against defendants Chicago Housing Authority (CHA) and H.J. Russell and Company (Russell); (2) a hospital lien may be enforced against a minor; and (3) the hospital lien may attach to a judgment that does not include an award of damages for medical expenses. For the reasons set forth in this opinion, because Manago's parent, April Pritchett (Pritchett), did not assign her cause of action for medical expenses to the injured minor plaintiff, the County does not have a lien under the Act. Accordingly, we affirm the judgment of the circuit court.

¶ 2                                  BACKGROUND

¶ 3      This case arises out of injuries plaintiff sustained on August 5, 2005, while he was a minor.[2] The Hospital provided care and treatment to plaintiff for these injuries on various dates between August 6, 2005, through September 28, 2010. The Hospital filed a notice of lien against plaintiff for unpaid hospital bills on August 10, 2009. Notice of the lien was forwarded to the plaintiff at his counsel's office by certified mail. The enforceability of the lien against a judgment entered by the circuit court in plaintiff's underlying personal injury lawsuit is the subject of this appeal.

¶ 4      The record discloses that on November 26, 2008, plaintiff filed a three-count negligence complaint against the CHA, Russell, and A.N.B. Elevator Services, Inc. (A.N.B.), through his

---

[1]For the purposes of simplicity, this opinion will refer to the Hospital as the County, except where otherwise noted. We further note that on January 27, 2015, this court granted April Pritchett's motion to suggest the death of the Akeem Manago of record and to appoint her as the special administrator of the minor's estate for the purpose of maintaining the present action.

[2]The record establishes plaintiff was 12 years old at the time of the occurrence. The parties do not contest that plaintiff was a minor at the time of his injury and throughout his treatment.

mother and next friend, Pritchett, seeking damages for personal injuries plaintiff sustained in an elevator operated and controlled by Russell and A.N.B. on the CHA premises at 1520 West Hastings in Chicago on August 5, 2005. Plaintiff alleged he was injured while an invitee on CHA premises. Plaintiff claimed the defendants carelessly and negligently failed to inspect and maintain the elevator, which was a direct and proximate cause of plaintiff's injuries. Plaintiff specifically alleged he "has become liable for sums of money for medical care and hospital care and attention in endeavoring to be cured of the injuries caused by said occurrence."

¶ 5    On March 9, 2011, plaintiff filed his second amended complaint,[3] a two-count negligence complaint against the CHA and Russell. The second amended complaint realleged defendants' general failure to inspect and maintain the elevator, and additionally alleged defendants failed to inspect the elevator to ensure persons, including the plaintiff, would not have access to the elevator roof. Plaintiff also asserted the CHA permitted an "attractive nuisance" to exist, placing minors at risk for harming themselves. Plaintiff further alleged defendants carelessly and negligently permitted him access to the elevator roof and that plaintiff was injured while the elevator was in motion. Plaintiff additionally alleged his mother, "April Pritchett[,] has expended and incurred obligations for medical expenses and care and will in the future expend and incur such further obligations."

---

[3]A case information summary included in the record on appeal appears to indicate that plaintiff filed an amended complaint in 2010, but said pleading does not appear in the record on appeal. On February 26, 2014, this court ordered the parties to supplement the record with any missing pleadings. The parties failed to file any pleadings specifically related to the cause before us (No. 2008 L 13211). The County, however, filed a supplemental record containing complaints in which plaintiff sued defendant CHA over the same August 5, 2005, incident but under a different case number (No. 2007 L 62011). The pleadings included in the supplemental record are: (1) a one-count complaint, filed February 22, 2007; (2) a one-count first-amended complaint, filed May 16, 2007; (3) an answer filed by defendant CHA on May 21, 2007; (4) another "first amended complaint," filed September 27, 2007, containing three counts; and (5) an answer by both CHA and Russell "to the amended complaint at law," filed October 28, 2007.

¶ 6    The record sets forth a notice of lien dated August 10, 2009, mailed from the County to plaintiff's attorney by certified mail, stating the County was asserting a lien upon plaintiff's cause of action under the Act for medical and hospital services rendered to plaintiff after the August 5, 2005 incident. The return receipt for the notice of lien, addressed to the law office of plaintiff's attorney, was signed by "D. Pinto."

¶ 7    On December 7, 2011, following a bench trial on plaintiff's personal injury action, commenced without a court reporter, the circuit court issued an order with A.N.B. no longer listed as a party in the caption, which lists Akeem Manago "*et al.*" as the plaintiff. The December 7, 2011, order indicates that following the presentation of the evidence, "[p]laintiffs" requested damages in the following amounts:

"April Pritchett – $79,572.63 for the medical bills stipulated to by the parties;

Akeem Manago – $704,000 broken down in this fashion – scarring; 350,000; past

pain and suffering – $300,000; and future loss of a normal life – $54,000."[4]

Defendants requested they be found not liable or, in the alternative, plaintiff be found 50% responsible for his own injuries.

---

[4]The second amended complaint does not contain any claim by April Pritchett for medical expenses. On April 29, 2014, this court ordered the County to either "file a second supplemental record containing the complaint upon which this case was tried" or "an explanatory statement." In response, the County stated on May 16, 2014, that it "is reasonably, although not entirely, certain that Case No. 08 L 13211 was tried on the 'second amended complaint.' " Our review of the record reveals that a count for Pritchett for hospital expenses was considered and adjudicated at trial. We, however, lack either a transcript or a bystanders report for said trial. In situations such as this we must resolve factual issues by presuming that the trial court's rulings were in conformity with the law and had a sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). As the appellant, it was the County's burden to provide a sufficiently complete record to support any claim of error. *Id.* In the absence of a complete record on appeal, we will resolve any doubts against the appellant and in favor of the validity of the trial court's rulings. *Id.* at 392. Consequently, we will presume (1) the trial court was correct in stating that Pritchett was a "plaintiff," and (2) that the trial court was correct in stating that, as a plaintiff, Pritchett brought a "count" and a "claim" for medical expenses.

¶ 8    The court rendered the following findings: (1) that the CHA knew or should have known through its agents at Russell that minor residents could access the elevator roof while the elevator was in motion; (2) notwithstanding this actual or constructive notice, neither the CHA nor Russell inspected the elevator access doors to determine whether the doors were open and thereby permitted lawfully riding passengers to gain access to the elevator roof; (3) plaintiff, while lawfully riding the elevator and after having been directed by Pritchett not to ride on the roof, climbed onto the roof on August 5, 2005, through one of the access panels; (4) plaintiff suffered severe and permanent injuries as a result of becoming entangled in the elevator's operating mechanism; and (5) plaintiff had established a *prima facie* case against defendants, but "Plaintiff April Pritchett" failed to do so, because the parties stipulated to the medical bills but "no evidence was adduced to establish that April Pritchett had any expectation that she had to pay any of the $79,572.53 back to Stroger Hospital."

¶ 9    The court awarded plaintiff: $250,000 for past, present and future scarring he will be forced to endure for the next 54.1 years; $75,000 for past, present and future pain and suffering and $75,000 for past, present and future loss of a normal life. The court further indicated plaintiff was 50% responsible for his injuries and reduced the judgment from $500,000 to $250,000. No monies were awarded to plaintiff for present or future medical expenses.

¶ 10    Pritchett filed a motion to reconsider, based on the circuit court's failure to award damages for the medical expenses. On December 8, 2011, defendants filed a motion to clarify the order on the grounds the awarded expenses in the order totaled $400,000, not the $500,000 aggregate mentioned in the order. On December 9, 2011, the circuit court issued an order clarifying the judgment was $400,000, reduced to $200,000, and the court would retain jurisdiction for the adjudication of any liens.

¶ 11    On January 25, 2012, the minor plaintiff filed a petition to strike and extinguish the County's lien. The petition asserts Pritchett filed a count in the complaint seeking damages for medical expenses.[5] Plaintiff's petition to strike and extinguish the lien argues: (1) a medical care provider has no claim for reimbursement of medical expenses against funds received by a minor from a tortfeasor pursuant to a judgment or settlement which does not include medical expenses; and (2) any claim for medical expenses incurred in treating a minor for injuries sustained due to a tortfeasor's negligence belongs to the parents, rather than the child. On March 2, 2012, the County filed its response to plaintiff's petition, arguing the Act does not allow a lien to be disallowed or reduced for medical services rendered to a minor, regardless of whether the minor's parents have a claim to recover medical expenses from a tortfeasor.

¶ 12    On April 25, 2012, the circuit court held a hearing on plaintiff's petition. Counsel for CHA and Russell, in addition to counsel for the County and plaintiff, presented arguments before the court. At the hearing, the trial judge inquired whether the County had a duty to intervene in the personal injury litigation to protect its lien. The trial judge also stated that one count of the complaint involved a claim by Pritchett under the Rights of Married Persons Act (750 ILCS 65/15 (West 2004)), seeking reimbursement of plaintiff's medical expenses.[6] The circuit court further inquired whether the County's counsel had read the December 7, 2011, order, particularly the ruling that Pritchett failed to establish she was entitled to damages for medical expenses. Moreover, the trial judge questioned the County's counsel about the existence of any case law

---

[5]The second amended complaint twice alleges Pritchett expended and incurred obligations for medical expenses and care, but contains no separate count on this subject and does not name Pritchett as a plaintiff. The County, however, does not dispute the trial judge's characterization of the pleadings.

[6] Neither the initial complaint nor the second amended complaint included in the record on appeal contains such a claim. The County, however, does not dispute the trial judge's characterization of the operative pleading on appeal.

permitting the imposition of the lien against a minor. Counsel for the County responded by referring to *In re Estate of Cooper*, 125 Ill. 2d 363 (1988), and *In re Estate of Enloe*, 109 Ill. App. 3d 1089 (1982), both of which were cited in the County's memorandum. The trial judge stated *Cooper* involved a settlement, rather than a judgment after a trial. The trial judge also stated "*Enloe* is a Fourth District case." While the trial judge provided other reasons for extinguishing the lien, he concluded that, under the circumstances presented by this case, the County had produced no case law permitting it to recover from the plaintiff after not appearing to protect the lien at trial.

¶ 13   Following the hearing, the circuit court denied plaintiff's motion to reconsider. The circuit court, however, granted plaintiff's motion to strike, dismiss and extinguish the County's lien. On May 7, 2012, the circuit court entered an agreed order directing plaintiff's counsel to escrow $66,666.67 in an interest-bearing account under plaintiff's name until further order of the court. On May 10, 2012, the County filed a timely notice of appeal to this court.

¶ 14   On February 19, 2013, this court accepted the case for consideration on the County's brief, due to plaintiff's failure to file an appellate brief within the time prescribed by Illinois Supreme Court Rule 343(a) (eff. July 1, 2008). On August 13, 2013, this court issued an opinion reversing the circuit court and remanding the matter for further proceedings. *Manago v. County of Cook*, 2013 IL App (1st) 121365. On September 18, 2013, plaintiff filed a petition for rehearing. On September 20, 2013, the Illinois Trial Lawyers Association (ITLA, *amicus*) filed a motion to file an *amicus curiae* brief in support of the petition for rehearing. On October 4, 2013, this court entered orders allowing ITLA to file an *amicus curiae* brief in support of the petition for rehearing, granting the petition for rehearing and setting a supplemental briefing schedule. On January 23, 2014, this court heard oral argument in this matter.

¶ 15                                   DISCUSSION

¶ 16    On appeal, the County, on behalf of the Hospital, argues the circuit court erred in striking, dismissing and extinguishing its statutory lien. The County does not dispute any of the circuit court's findings of fact. Where the court is requested to determine the correctness of the circuit court's application of law to undisputed facts, our review is *de novo*. *Wills v. Foster*, 229 Ill. 2d 393, 399 (2008). "Under the *de novo* standard of review, the reviewing court does not need to defer to the trial court's judgment or reasoning." *Platinum Partners Value Arbitrage Fund, Ltd. Partnership v. Chicago Board Options Exchange*, 2012 IL App (1st) 112903, ¶ 12. "*De novo* review is completely independent of the trial court's decision." *Id*.

¶ 17                              Statutory Interpretation

¶ 18    This case involves an interpretation of the Act and amendments thereto, as well as the Rights of Married Persons Act. We review *de novo* the interpretation of a statute as a question of law. *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 332 (2008). "Courts presume that the legislature envisions a consistent body of law when it enacts new legislation." *Lily Lake Road Defenders v. County of McHenry*, 156 Ill. 2d 1, 9 (1993). "[W]here there is an alleged conflict between two statutes, a court has a duty to construe those statutes in a manner that avoids an inconsistency and gives effect to both statutes, where such an interpretation is reasonably possible." *McNamee v. Federated Equipment & Supply Co.*, 181 Ill. 2d 415, 427 (1998). "[W]here the passage of a series of legislative acts results in confusion and consequences which the legislature may not have contemplated, courts must construe the acts in such a way as to reflect the obvious intent of the legislature and to permit practical application of the statutes." *People ex rel. Community High School District No. 231 v. Hupe*, 2 Ill. 2d 434, 448 (1954).

¶ 19    When interpreting these statutes, and thereby determining and resolving any conflict

between them, we are aided by the canons of statutory construction. Our primary goal is to ascertain and give effect to the intention of the legislature. *Ries v. City of Chicago*, 242 Ill. 2d 205, 215-16 (2011). The language of a statute is the most reliable indicator of the legislature's objectives in enacting a particular law. *Alvarez v. Pappas*, 229 Ill. 2d 217, 228 (2008). If the plain language used in the statute is clear and unambiguous, we are not at liberty to depart from its plain meaning. *Ries*, 242 Ill. 2d at 216. "We construe the statute as a whole and cannot view words or phrases in isolation but, rather, must consider them in light of other relevant provisions of the statute." *In re E.B.*, 231 Ill. 2d 459, 466 (2008). "Moreover, a court will avoid an interpretation of a statute that would render any portion of it meaningless or void." *McNamee*, 181 Ill. 2d at 423.

¶ 20   A court generally "will not utilize extrinsic aids of statutory interpretation unless the statutory language is unclear or ambiguous." *Brunton v. Kruger*, 2015 IL 117663, ¶ 24. " 'A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more different ways.' " *Id.* (quoting *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395-96 (2003)). A court "is not bound by the literal language of a statute that produces a result inconsistent with clearly expressed legislative intent, or that yields absurd or unjust consequences not contemplated by the legislature." *In re D.F.*, 208 Ill. 2d 223, 230 (2003). In construing a statute, "we presume that the legislature did not intend absurdity, inconvenience or injustice." *Alvarez*, 229 Ill. 2d at 228. A court "will avoid a construction leading to an absurd result, if possible." *Hubble v. Bi-State Development Agency of the Illinois-Missouri Metropolitan District*, 238 Ill. 2d 262, 283 (2010) (citing *City of East St. Louis v. Union Electric Co.*, 37 Ill. 2d 537, 542 (1967)).

¶ 21   Further, if the statutory language is not clear, an examination of the reason and necessity

for the law, the evils which the legislature sought to remedy and the purposes intended to be accomplished is particularly important. *Harvel v. City of Johnston City*, 146 Ill. 2d 277, 283 (1992). "Where the letter of the statute conflicts with the spirit of it, the spirit will be controlling when construing the statute's provisions." *Gill v. Miller*, 94 Ill. 2d 52, 56 (1983).

¶ 22 Additionally, the legislature is presumed to be aware of judicial decisions interpreting legislation. *Pielet v. Pielet*, 2012 IL 112064, ¶ 48 (citing *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 218 (1983)). " 'Where statutes are enacted after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the prevailing case law.' " *Burrell v. Southern Truss*, 176 Ill. 2d 171, 176 (1997) (quoting *People v. Hickman*, 163 Ill. 2d 250, 262 (1994)). Similarly, the legislature is presumed to have acted with such knowledge when amending a statute. *Morris v. William L. Dawson Nursing Center, Inc.*, 187 Ill. 2d 494, 499 (1999). Therefore, when the legislature reenacts a statute without modification it is assumed to have intended the same effect. *Williams v. Crickman*, 81 Ill. 2d 105, 111 (1980); *People ex rel. Klaeren v. Village of Lisle*, 316 Ill. App. 3d 770, 782 (2000).

¶ 23 With these rules of statutory interpretation in mind, we turn to address the issues the County raises on appeal.

¶ 24 Intervention and the Health Care Services Lien Act

¶ 25 The County argues it was not required to intervene in the underlying personal injury action to protect its lien. We agree. The Act provides in relevant part:

"The lien shall include a written notice containing the name and address of the injured person, the date of the injury, the name and address of the health care professional or health care provider, and the name of the party alleged to be liable

to make compensation to the injured person for the injuries received. The lien notice shall be served on both the injured person and the party against whom the claim or right of action exists. Notwithstanding any other provision of this Act, payment in good faith to any person other than the healthcare professional or healthcare provider claiming or asserting such lien prior to the service of such notice of lien shall, to the extent of the payment so made, bar or prevent the creation of an enforceable lien. Service shall be made by registered or certified mail or in person." 770 ILCS 23/10(b) (West 2004).

In this case, the County provided notice to plaintiff at his attorney's office by certified mail.[7] Additionally, plaintiff, by filing a petition to strike and extinguish the lien, demonstrated actual notice of the lien. Although the record contains no evidence the County served notice on the tortfeasors, it is apparent the tortfeasors had notice of the lien through the appearance of their counsel at the hearing on the petition. Accordingly, we conclude the lien is valid for the purpose of notification. See *Cirrincione v. Johnson*, 184 Ill. 2d 109, 113-14 (1998). To invalidate the lien due to technicalities would not only elevate form over substance, but would also be contrary to the purpose of the statutory lien, which is to lessen the financial burden on those who treat nonpaying injured individuals. *Id*.

¶ 26    Furthermore, pursuant to statute, "[t]he lien of a health care professional or health care provider under this Act shall, from and after the time of the service of the lien notice, attach to any verdict, judgment, award, settlement, or compromise secured by or on behalf of the injured person." 770 ILCS 23/20 (West 2004). Consequently, under the Act, "[o]nly when a recovery is made can the lien come into existence, because absent a provision to the contrary, a lien is

---

[7]In fact, the parties stipulated to the medical bills at trial, but not whether the bills were reasonable and necessary.

created only when there is property on hand to which it may attach." *Estate of Cooper*, 125 Ill. 2d at 369. Consistent with *Estate of Cooper*, our supreme court subsequently ruled that, unlike a subrogee or a member of a class action, a hospital lienholder has no standing to participate in a plaintiff's personal injury lawsuit, and cannot bring independent causes of action against the tortfeasors. *Wendling v. Southern Illinois Hospital Services*, 242 Ill. 2d 261, 270 (2011). Insofar as a hospital lienholder has no standing to participate in a plaintiff's personal injury lawsuit, the County cannot be required to intervene in such a suit on the Hospital's behalf. *Id.*[8]

¶ 27                    Enforcement of a Health Care Services Lien Against a Minor

¶ 28    The County next argues a hospital lien may be enforced against a minor. The Act provides in part:

> "Every health care professional and health care provider that renders any service
> in the treatment, care, or maintenance of an injured person, except services
> rendered under the provisions of the Workers' Compensation Act or the Workers'
> Occupational Diseases Act, shall have a lien upon all claims and causes of action
> of the injured person for the amount of the health care professional's or health
> care provider's reasonable charges up to the date of payment of damages to the
> injured person. The total amount of all liens under this Act, however, shall not
> exceed 40% of the verdict, judgment, award, settlement, or compromise secured
> by or on behalf of the injured person on his or her claim or right of action." 770
> ILCS 23/10(a) (West 2004).

The Act, in referring to the "injured person," does not distinguish between minors and adults. *Id.* Accordingly, the County contends the plain language of the Act permits a hospital lien to be

---

[8]On rehearing, neither plaintiff nor the *amicus* has taken issue with this conclusion.

enforced against a minor.

¶ 29    In contrast, on rehearing plaintiff sets forth a number of arguments as to why a lien under

the Act may not be enforced against a minor. Plaintiff's central contention is that there can be no

lien against him because there is no underlying debt based on his status as a minor. Plaintiff

notes the Uniform Fraudulent Transfer Act (740 ILCS 160/2(h) (West 2012)) defines "lien" as "a

charge against or an interest in property to secure payment of a debt or performance of an

obligation, and includes a security interest created by agreement, a judicial lien obtained by legal

or equitable process or proceedings, a common-law lien, or a statutory lien." Plaintiff also notes

the Uniform Commercial Code (810 ILCS 5/2A-103(1)(r) (West 2012)) provides a somewhat

similar definition; that a "lien" is "a charge against or interest in goods to secure payment of a

debt or performance of an obligation, but the term does not include a security interest."

Plaintiff further observes the elements of an equitable lien are: " '(1) a debt, duty, or obligation

owing by one person to another, and (2) a *res* to which that obligation attaches.' " *Lewsader v.

Wal-Mart Stores, Inc.*, 296 Ill. App. 3d 169, 178 (1998) (quoting *Paine/Wetzel Associates, Inc. v.

Gitles*, 174 Ill. App. 3d 389, 393 (1988)). We note that this court has held there is no need for a

hospital lien where the underlying debt or obligation has been extinguished. *N.C. v. A.W.*, 305 Ill.

App. 3d 773, 775 (1999).

¶ 30    Plaintiff's argument regarding the debt overlooks points of statutory and common law.

First, in *Estate of Enloe*, this court ruled that the clear and mandatory language of the Act creates

such debts and liability of the injured person secured by lien, regardless of any such remedy at

common law. *Estate of Enloe*, 109 Ill. App. 3d at 1091. This ruling is consistent with our

supreme court's observation that the Act allows hospitals to provide treatment and thereby enter

into a creditor-debtor relationship. *Estate of Cooper*, 125 Ill. 2d at 368; *Maynard v. Parker*, 75

Ill. 2d 73, 75 (1979). Indeed, one reason the Act exists is because hospitals may "enter into a creditor-debtor relationship without benefit of the opportunity usually afforded a creditor to ascertain the prospective debtor's ability to pay." *Maynard*, 75 Ill. 2d at 75.

¶ 31    Second, under the common law, our supreme court has long held a minor or minor's estate may incur debt or other obligations by operation of law. See, *e.g.*, *Smith v. Smith*, 69 Ill. 308, 312 (1873). It is also well established, as a general rule, that a minor or the minor's estate may be liable for necessaries furnished to the minor. *In re Estate of Johnstone*, 64 Ill. App. 2d 447, 449 (1965); *Pelham v. Howard Motors, Inc.*, 20 Ill. App. 2d 528, 529 (1959); see *Zazove v. Minneapolis, St. Paul & Sault Ste. Marie Ry. Co.*, 218 Ill. App. 534, 538 (1920) (professional services of an attorney may be a necessary for which an infant is responsible). Indeed, plaintiff's brief on rehearing concedes a minor is liable for the cost of necessaries. Plaintiff does not dispute on appeal that the medical services rendered to him were necessaries although there was no evidence of this fact presented during the trial. See, *e.g.*, *Estate of Woodring v. Liberty Mutual Fire Insurance Co.*, 71 Ill. App. 3d 158, 160 (1979). Accordingly, whether by operation of the Act or the common law, a debt exists in this case.[9]

¶ 32    While a minor may incur a debt, there is no basis for the County to seek reimbursement in this case, due to the operation of what is commonly known as the family expenses statute, which is a provision of the Rights of Married Persons Act (family expenses statute) (750 ILCS 65/15 (West 2004)). The family expenses statute provides, in relevant part:

> "The expenses of the family and of the education of the children shall be
>
> chargeable upon the property of both husband and wife, or of either of them, in

---

[9]Historically, a minor's liability for necessaries was founded on concepts such as *quantum meruit* and *quantum valebant*. See, *e.g.*, *Falconer v. May, Stern & Co.*, 165 Ill. App. 598, 600 (1911). Therefore, a reasonable fee for services rendered may be considered an unpaid debt. See *Scholtens v. Schneider*, 173 Ill. 2d 375, 391 (1996) (legal services).

favor of creditors therefor, and in relation thereto they may be sued jointly or separately." 750 ILCS 65/15(a)(1) (West 2004).

The identical language now codified at section 15(a)(1) has existed since the statute was enacted in 1874. See *North Shore Community Bank & Trust Co. v. Kollar*, 304 Ill. App. 3d 838, 842 (1999); Ill. Rev. Stat. 1874, ch. 68, ¶ 15. The purpose of this statute is to protect creditors. See *Proctor Hospital v. Taylor*, 279 Ill. App. 3d 624, 627 (1996) (imposing liability against non-custodial parents for expenses incurred on behalf of their children).

¶ 33    "[T]he term 'family expense' has not been, and perhaps cannot be, clearly defined." *North Shore Community Bank & Trust Co. v. Kollar*, 304 Ill. App. 3d at 843 (quoting *White v. Neeland*, 114 Ill. App. 3d 174, 175 (1983)).[10] It is well established, however, that under the family expenses statute, parents are liable for the medical expenses of their minor children. *Graul v. Adrian*, 32 Ill. 2d 345, 347 (1965). Consequently, our supreme court has held that a parent may recover, in a separate action, medical and funeral expenses incurred by the parent for a child whose death occurs as the result of the wrongful act of a third party. *Id*.

¶ 34    Since the *Graul* decision, this court has held that, due to the operation of the family expenses statute, any cause of action to recover for medical expenses is that of the parent and not of the child. For example, in *Bibby v. Meyer*, 60 Ill. App. 2d 156, 163 (1965), decided shortly after *Graul*, the child's attempt to recover medical expenses in his tort action was held barred by a release the mother had signed. In *Kennedy v. Kiss*, 89 Ill. App. 3d 890, 894 (1980), a case in which the parents assigned their cause of action to the minor plaintiff, this court held that because the cause of action for medical expenses lay with the parents, it was essential for the

---

[10]Our supreme court has defined family expenses generally as "expenses for articles which conduce in a substantial manner to the welfare of the family generally and tend to maintain its integrity." *Carson Pirie Scott & Co. v. Hyde*, 39 Ill. 2d 433, 436 (1968).

minor plaintiff to both plead and prove the parents were free from contributory negligence. In *Reimers v. Honda Motor Co.*, 150 Ill. App. 3d 840, 843 (1986), this court held that because a parent's right to recover medical expenses arises out of the injury to the minor child, it is governed by the applicable statutory limitations period for derivative causes of action. Although the two rights of action are separate and distinct, the parent's cause of action is frequently merged with the child's cause of action into a single lawsuit. *Doe v. Montessori School of Lake Forest*, 287 Ill. App. 3d 289, 302 (1997). Within said cause of action, a parent typically seeks medical expenses under a separate count. See *Goldberg v. Ruskin*, 113 Ill. 2d 482, 484 (1986); *Primax Recoveries, Inc. v. Atherton*, 365 Ill. App. 3d 1007, 1013 (2006).

¶ 35    Furthermore, there is a line of cases generally holding that an insurer may not enforce a subrogation lien against the recovery received by a minor's estate.[11] *E.g.*, *Estate of Aimone v. State of Illinois Health Benefit Plan/Equicor*, 248 Ill. App. 3d 882, 883-84 (1993); *Kelleher v. Hood*, 238 Ill. App. 3d 842, 849 (1992); *In re Estate of Hammond*, 141 Ill. App. 3d 963, 965 (1986); *Estate of Woodring*, 71 Ill. App. 3d at 160. These subrogation lien cases are based not only on the rule that a minor child cannot be a third-party beneficiary of an insurance contract, but also on the premise that only the parents can recover for the child's medical expenses. *Primax Recoveries, Inc. v. Atherton*, 365 Ill. App. 3d 1007, 1011 (2006). As only a parent can recover for his or her child's medical expenses, it follows that the County cannot pursue a lien against plaintiff under the Act as it is the parent, and not the minor, who is liable for those expenses. See *Graul*, 32 Ill. 2d at 347. Accordingly, where the parent has not assigned his or her cause of action to the minor, regardless of whether or not medical expenses are awarded, under

---

[11]This court has upheld the validity of subrogation liens where the circuit court found the minor a third-party beneficiary of the relevant insurance policy. See *Sosin v. Hayes*, 258 Ill. App. 3d 949, 952-53 (1994); *In re Estate of Scott*, 208 Ill. App. 3d 846, 849-50 (1991).

the Act an award cannot be attached to any judgment obtained by a minor unless the lien is sought under the family expenses statute. Further, as noted by our supreme court in *Graul*, the language of the family expenses statute specifically makes the expenses of the family chargeable against the parents of the minor. See *id.*

¶ 36    In addition, the *amicus* argues that the "injured person" identified in section 10(a) of the Act should not be limited to a minor patient, but may be interpreted to extend to the minor's parent or parents. In *Claxton v. Grose*, 226 Ill. App. 3d 829 (1992), this court ruled that a father could be considered an injured person entitled to bring suit under section 16 of the Illinois Animal Control Act (Ill. Rev. Stat. 1989, ch. 8, ¶ 366), even though his son was the person actually attacked by the defendant's Doberman pinscher, based in part on the operation of the family expenses statute. *Claxton*, 226 Ill. App. 3d at 831-32. The *amicus* argues that the same logic compels a similar interpretation of the Act in this case.

¶ 37    We agree that the reasoning in *Claxton* supports the conclusion that the "injured person" in section 10(a) of the Act extends to the parents of a minor. See *id*. In addition, the tension between the Act and the family expenses statute is best resolved by including parents within the scope of the term "injured person" in section 10(a) of the Act. Such an interpretation is within the object, spirit and the meaning of the Act. See *Harvel*, 146 Ill. 2d at 284. The contrary, narrower, interpretation of section 10(a) would produce an anomalous or absurd result. See *Stewart v. Industrial Comm'n*, 115 Ill. 2d 337, 340 (1987). The broader interpretation avoids an inconsistency and gives effect to both statutes (*McNamee*, 181 Ill. 2d at 427), particularly where the purpose of both statutes is to aid creditors. Given the longstanding rule that a cause of action to recover for medical expenses is that of the parent and not the child, the judgment that the health care professional or provider would seek to attach will generally be awarded to a parent,

not the minor. See *Graul*, 32 Ill. 2d at 347. Furthermore, in cases where damages for medical expenses are not awarded, or the judgment is insufficient to satisfy a lien, the health care professional or provider would ultimately seek to recover from the minor's parent or parents in any event. Including parents within the definition of an "injured person" in section 10(a) of the Act thereby assists health care professionals and providers to the extent that it will reduce duplicative and inefficient proceedings to enforce their liens. Conversely, excluding parents from the definition would "set[ ] the stage for inequities that the legislature could not have intended and failed to recognize when it debated and enacted the law." *Burrell*, 176 Ill. 2d at 179 (Harrison, J., dissenting); see *People ex rel. Community High School District No. 231*, 2 Ill. 2d at 448.[12]

¶ 38    In response to the dissent, we observe that on questions of statutory interpretation, our primary goal is to interpret and construe statutes so that the intention of the legislature is ascertained and given effect. *Belfield v. Coop*, 8 Ill. 2d 293, 306 (1956). All other rules of statutory construction are subordinate to this cardinal principle. *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 232 (2001). Thus, we defer not only to the interpretations of higher courts, but also to the intent of the legislature. Further, we must also defer to precedent under the doctrine of

---

[12]Our initial opinion in this matter relied on *dicta* in *Anderson v. Department of Mental Health & Developmental Disabilities*, 305 Ill. App. 3d 262 (1999), suggesting that removing the phrase "based on the negligent or wrongful act" from the prior version of the Act "would permit the lien to be attached to any verdict or judgment recovered by the injured person." (Internal quotation marks omitted.) *Id*. at 266. The Act was amended subsequent to *Anderson* (see *Galvan v. Northwestern Memorial Hospital*, 382 Ill. App. 3d 259, 272 n.3 (2008)), and removed the phrase "based on the negligent or wrongful act" (compare 770 ILCS 35/2 (West 1996), with 770 ILCS 23/20 (West 2004)). Although the *Anderson* court may have been correct about the effect of such an amendment when looking solely at the plain language of the Act, we are mindful that the *Anderson* court was not required to address the interaction of the Act and the family expenses statute. Accordingly, we conclude that the *dicta* in *Anderson* is not persuasive authority on this point of law.

*stare decisis*. See *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008). The challenge a reviewing court faces is that statutory language and existing precedent narrow the range of possible outcomes, and accordingly does not dictate a single permissible answer in every case. Where a conflict exists between two statutes, our duty is to construe those statutes in a manner that avoids an inconsistency and gives effect to both statutes. See *McNamee*, 181 Ill. 2d at 427. Moreover, statutes relating to the same subject are governed by one spirit and a single policy, and we must presume that the legislature intended these statutes to be consistent and harmonious. *Uldrych v. VHS of Illinois, Inc.*, 239 Ill. 2d 532, 540 (2011).

¶ 39    Here, we look at the Act and the family expenses statute in harmony so that the goal of the legislature can be accomplished. In this instance, the Act and the family expenses statute is best resolved by including parents within the scope of the term "injured person" in section 10(a) of the Act. Such an interpretation is within the object, spirit and the meaning of the Act. See *Harvel*, 146 Ill. 2d at 284. The contrary, narrower, interpretation of section 10(a) would produce an anomalous or absurd result. See *Stewart v. Industrial Comm'n*, 115 Ill. 2d 337, 340 (1987). The broader, harmonious interpretation avoids an inconsistency and gives effect to both statutes, which is our primary goal. *McNamee*, 181 Ill. 2d at 427. This is particularly relevant where the purpose of both the Act and the family expenses statute is to aid creditors. Therefore, it is clear that the intent of the legislature was to have both the Act and the family expenses statute work in harmony.

¶ 40    In support of its position, the dissent cites four cases, including two that are outside of our jurisdiction and one that is nonbinding on this court, for the proposition that "a parent's recovery of [medical] expenses may be estopped in favor of the child where the parent brings the suit as next friend." *Infra* ¶ 65. The crucial distinction in these cases is that the aggrieved parties were

ultimately awarded the medical expenses they sought (*White v. Seitz*, 258 Ill. App. 318, 321 (1930), *Fox v. Hopkins*, 343 Ill. App. 404, 405-06 (1951), and *Abbondola v. Kawecki*, 29 N.Y.S.2d 530, 531 (N.Y. Sup. Ct. 1941)) or the court stated, as a general proposition of law, that a parent was estopped from bringing a future suit for medical expenses where the child had already recovered the medical expenses (*Ellington v. Bradford*, 86 S.E.2d 925, 927 (N.C. 1955)). In this case, however, the trial court expressly found that Prichett failed to establish her claim for medical expenses at trial. Thus, no medical expenses were adjudged. This portion of the trial court's findings were never appealed. Accordingly, the cases cited by the dissent are inapposite to the case at bar.

¶ 41                    *Estate of Cooper* and *Estate of Enloe*

¶ 42    The County, however, relies on *Estate of Cooper* and *Estate of Enloe*.[13] The circuit court specifically rejected the application of those decisions to this matter. The County's argument implicates *stare decisis* principles. "The doctrine of *stare decisis* expresses the policy of the courts to stand by precedents and not to disturb settled points." *Clark v. Children's Memorial Hospital*, 2011 IL 108656, ¶ 102. *Stare decisis* requires a court to follow the decision of a superior court; it does not bind courts to follow the decisions of equal or inferior courts. *O'Casek*, 229 Ill. 2d at 440. "Thus, the opinion of one district, division, or panel of the appellate court is not binding on other districts, divisions, or panels." *Id.* Nevertheless, horizontal, district-to-district *stare decisis* is "functionally desirable." *Gilbert v. Municipal Officers' Electoral Board*, 97 Ill. App. 3d 847, 848 (1981). When a rule of law has been settled, contravening no statute or constitutional principle, such rule ought to be followed absent good cause or compelling reasons to depart from such rule. *Vitro v. Mihelcic*, 209 Ill. 2d 76, 82 (2004). "Where

---

[13]The County also cites in passing *Wills v. Foster*, 229 Ill. 2d 393 (2008), and *Maynard v. Parker*, 75 Ill. 2d 73 (1979), which do not involve minor plaintiffs.

a court of review reexamines an issue already ruled upon and arrives at an inapposite decision, the straight path of *stare decisis* is affected, as well as the reliance interests of litigants, the bench, and the bar." *O'Casek*, 229 Ill. 2d at 440. For the following reasons, we conclude our supreme court's decision in *Estate of Cooper* is not applicable in this case, and that *Estate of Enloe* should not be followed.

¶ 43    The County first relies on *Estate of Cooper*, which involved the settlement of a personal injury claim by the estate of a minor. Our supreme court stated that "as a debtor of [the hospital], the estate is obligated to pay for treatment rendered to [the minor] out of any available resources." *Estate of Cooper*, 125 Ill. 2d at 369. The issues of whether the creation of a hospital lien was precluded by the injured person's minor status and the operation of the family expenses statute, however, were not raised in *Estate of Cooper*. Rather, the issue decided was the appropriate time for enforcement of a hospital lien, the existence of which was not disputed, and whether a lien can be enforced against an annuity. *Id*. at 368. Thus, we conclude the holding in *Estate of Cooper* is not applicable in this appeal.[14]

¶ 44    The County also relies upon *Estate of Enloe*, in which this court rejected the argument that a minor could not be held liable under a hospital lien statute (Ill. Rev. Stat. 1979, ch. 82, ¶ 97) simply because parents are liable for the medical expenses of their minor children under the family expenses statute. *Estate of Enloe*, 109 Ill. App. 3d at 1091-92. The *Enloe* court observed that *Estate of Woodring*, which stated the parents were primarily liable for the minor's medical

---

[14]The facts in *Estate of Cooper* are also strikingly different from those presented in this appeal. The circuit court of Cook County accepted the settlement agreement at issue and authorized payment contingent upon the adjudication of hospital liens. *Estate of Cooper*, 125 Ill. 2d at 366. Moreover, this court's opinion in the case noted that, as part of the settlement with Allstate Insurance Company, the minor's parent and guardian agreed to indemnify and hold the insurer and its insured harmless from any third-party lien upon the proceeds of the compromise. See *In re Estate of Cooper*, 156 Ill. App. 3d 270, 271 (1987).

expenses under the family expenses statute, was concerned with subrogation, which applies only when a debt was paid for one who was primarily liable. *Id.* at 1091. In contrast, the primary-secondary liability distinction in *Estate of Enloe* was not crucial, because the case involved the Act. See *id*. The *Enloe* court then focused upon the word "chargeable" in the family expenses statute, reasoning:

> "We agree with petitioner that the statute merely provides an alternative remedy for creditors. Chargeable means 'capable of being charged to a particular account or as an expense or liability ***.' (Webster's Third New International Dictionary 377 (1976).) Had the legislature intended for this statute to be the sole remedy for creditors, the legislature could easily have stated that the expenses 'shall be charged' upon the property of the parents. Since the legislature instead merely stated the expenses shall be capable of being charged to the family's property, it follows that this is not an exclusive remedy and therefore it does not conflict with the clear language of the Hospital Liens Statute." *Id.* at 1091-92.

*Estate of Enloe* was decided by the Fourth District of this court; it has been followed on the point at issue only once, by the Third District. *In re Estate of Norton*, 149 Ill. App. 3d 404, 405 (1986). Conversely, in *Reimers*, the First District held (based on the family expenses statute) that any cause of action to recover for medical expenses is that of the parent and not the child. *Reimers*, 150 Ill. App. 3d at 843. Similarly, *Kennedy*, which held in part that the cause of action for medical expenses lay with the parents, is a First District decision. *Kennedy*, 89 Ill. App. 3d at 894.

¶ 45    Clearly, *Reimers*, *Kennedy*, and the other cases cited by plaintiff did not directly consider the effect of the family expenses statute on the enforceability of a hospital lien. Nevertheless, the

22

rule established in those cases is that the cause of action belongs to the parent and not the child. The rule thus runs contrary to the creation of a lien for medical expenses where an injured minor has parents. The *Enloe* court only considered *Estate of Woodring* and distinguished the case as addressing primary versus secondary liability in the context of subrogation. *Estate of Enloe*, 109 Ill. App. 3d at 1091. While we agree that a hospital lienholder under the Act is unlike a subrogee (see *Wendling*, 242 Ill. 2d at 270), the *Enloe* court, however, did not address *Bibby* or *Kennedy*, neither of which involved subrogation.[15] Moreover, the *Enloe* court did not consider that the subrogation lien cases are based on the rules that (1) a minor child cannot be a third-party beneficiary of an insurance contract and (2) only the parents can recover for the child's medical expenses. See *Primax Recoveries, Inc.*, 365 Ill. App. 3d at 1011.

¶ 46    We also observe the family expenses statute was amended prior to the decision in *Estate of Enloe* and after the decisions in *Bibby* and *Kennedy*. See Pub. Act 82-262, § 1 (eff. Jan. 1, 1982). The legislature is therefore presumed to have been aware of these decisions and to have acted with such awareness when amending the statute. *Burrell*, 176 Ill. 2d at 176; *Pielet*, 2012 IL 112064, ¶ 48; *Morris*, 187 Ill. 2d at 499. The legislature here chose to amend the statute in other respects, but reenacted the language relevant to this matter intact. Thus, we presume the legislature intended the family expenses statute be interpreted as this court did in *Bibby* and *Kennedy*. See *Williams*, 81 Ill. 2d at 111; *Klaeren*, 316 Ill. App. 3d at 782.[16]

¶ 47    In short, *Estate of Enloe* did not account for the weight of authority, including prior

---

[15]We do not fault the *Enloe* court on this point, as *Bibby* and *Kennedy* may not have been brought to the court's attention by the litigants.

[16]The relevant portion of the family expenses statute was also reenacted after the decision in *Estate of Enloe*. See Pub. Act 86-689, § 1 (eff. Jan. 1, 1990). The question here, however, is whether the *Estate of Enloe* decision adequately accounted for the weight of authority and the presumed endorsement of that case law by the legislature in 1982.

authority, interpreting the family expenses statute or rebut the legislature's presumed endorsement of that interpretation. Thus, from the standpoint of *stare decisis*, the *Enloe* court did not provide good cause or compelling reasons to depart from the prior case law bearing on the issue. See *Vitro*, 209 Ill. 2d at 82. Moreover, departing from well-established case law would adversely affect the reliance interests of litigants, the bench, and the bar. See *O'Casek*, 229 Ill. 2d at 440. For these reasons, we choose to follow the interpretation of the family expenses statute in *Reimers* and *Kennedy*. This interpretation is also consistent with the subrogation lien cases, which are partially based on the rule established in *Bibby* and *Kennedy*. Accordingly, we conclude in this matter, where Pritchett did not assign her cause of action for medical expenses to the injured minor plaintiff, no lien exists under the Act. Thus, the circuit court did not err in extinguishing the purported lien.

¶ 48    While we have determined the County must go through the family expenses statute in order to recover the medical expenses incurred by plaintiff, we further interpret the language of the Act to limit the creation of a lien to claims or causes of action seeking medical expenses. As previously noted, section 10(a) of the Act provides health care providers "shall have a lien upon all claims and causes of action of the injured person for the amount of the health care professional's or health care provider's reasonable charges up to the date of payment of damages to the injured person." 770 ILCS 23/10(a) (West 2004). The phrase "all claims and causes of action of the injured person" is limited by the phrase "for the amount of the health care professional's or health care provider's reasonable charges up to the date of payment of damages to the injured person." *Id.*; *In re E.B.*, 231 Ill. 2d at 467. The latter phrase does not merely describe the amount of a lien; it also describes the nature of the claim triggering the creation of

the lien, *i.e.*, claims for reasonable medical charges.[17] We note that in this case, the trial court did not enter an award of medical expenses. As we interpret the Act to mean that the hospital lien can only attach to an award of medical expenses, and since the trial court did not award medical expenses, there can be no lien.

¶ 49    Given our conclusion on this issue, we need not address the remainder of the County's arguments on appeal.

¶ 50                                          CONCLUSION

¶ 51    In sum, we conclude the County's purported lien was not invalidated for technical reasons. In addition, the County was not required to intervene in the personal injury lawsuit to protect its purported lien. The County, however, does not have a lien under the Act where the parent did not assign her cause of action for medical expenses to the injured minor plaintiff. For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 52    Affirmed.

¶ 53    JUSTICE GORDON, specially concurring.

¶ 54    I agree with the majority's result, but for additional important reasons, and to provide guidance to the legal community and legislature in the future, I must write separately.

¶ 55    It is clear under Illinois law that, if the plain language used in a statute is clear and unambiguous, the appellate court is not at liberty to depart from its plain meaning. *Ries*, 242 Ill. 2d at 216. The Act which is the subject of this appeal says that Stroger Hospital, which is a hospital operated by the County of Cook, "shall have a lien upon all claims and causes of action of the injured person for the amount of the health care *** provider's reasonable charges," not to

---

[17]We observe that "reasonable charges" in this context are generally confined to charges relating to injuries to the patient. See *Gaskill v. Robert E. Sanders Disposal Hauling*, 249 Ill. App. 3d 673, 677 (1993).

"exceed 40% of the verdict [or] judgment." 770 ILCS 23/10(a) (West 2004). The clear and unambiguous language of the statute attaches its lien to the injured person's loss of normal life, disability, pain and suffering, scarring, and all other damages because those elements of damages are the injured person's claims and they are also part of the injured person's cause of action. The Act does not say that the lien is enforceable only as to the medical recovery by the injured party. To read this into the Act changes the clear and unambiguous language of the statute.

¶ 56      Section 20 of the Act further tells us that the lien attaches to the entire verdict and judgment, which again includes the injured person's loss of normal life, disability, pain and suffering, scarring, and all other damages. 770 ILCS 23/20 (West 2004). Again, there is no limitation specified to only the medical expenses included in a verdict, judgment, or settlement. A court of review must construe the statute as a whole and cannot view words or phrases in isolation but, rather, must consider them in light of other relevant provisions of the statute. *In re E.B.*, 231 Ill. 2d 459, 466 (2008). The lawyers for the hospital argue that the lien attaches to the entire verdict because that is what the statute says. I agree, but I find the statute to be a violation of the public policy in Illinois.

¶ 57      In Illinois, causes of action for personal torts are not assignable. *Bernardini v. Home & Automobile Insurance Co.*, 64 Ill. App. 2d 465, 467 (1965). In the 1960s, for the first time in the history of Illinois, medical pay subrogation was placed into automobile insurance policies and in the *Bernardini* case, the lower court found that the subrogation of medical payments was void as against public policy because it was an assignment of a tort. The appellate court reversed, finding that the medical subrogation claim was not against public policy because its wording limited recovery in a third party tort action only to the medical expenses and therefore was not an assignment of a tort. *Bernardini*, 64 Ill. App. 2d at 466-67. The *Bernardini* court found that

subrogation of the medical expenses operated only to secure contribution and indemnity, whereas an assignment transfers the whole claim. *Bernardini*, 64 Ill. App. 2d at 468 (citing *Damhesel v. Hardware Dealers Mutual Fire Insurance Co.*, 60 Ill. App. 2d 279 (1965) and *Remsen v. Midway Liquors, Inc.*, 30 Ill. App. 2d 132 (1961)). The insurance policy in *Bernardini* limited the right to subrogation of the medical expenses only and unless there was a recovery of medical expenses by the insured against a tortfeasor, there would be no recovery for the insurance company. *Bernardini*, 64 Ill. App. 2d at 467-68.

¶ 58    There are two types of subrogation, one is by contract as is found in insurance policies, and the other is by statute as found in the Act here. *Remsen*, 30 Ill. App. 2d at 143. The legal problem that exists in the Act is that the language provides as assignment of the entire claim of the injured person subject to statutory limitations[18] and that concept is void as against public policy. Even if legal scholars believe that the Act is not a statutory subrogation, my result would be the same because the taking of the entire claim of the injured person is still void as against public policy.

¶ 59    *Bernardini* is still good law and has been cited in many similar decisions. See *In re Estate of Mallerdino*, 20 Ill. App. 3d 331, 336 (1974); *Margolin v. Public Mutual Fire Insurance Co.*, 4 Ill. App. 3d 661, 668 (1972); *Dinn Oil Co. v. Hanover Insurance Co.*, 87 Ill. App. 2d 206, 212 (1967). The fact that the majority reads the Act to include only medical expenses does not cure this defect in the language of the Act.

---

[18] Section 10 of the Act (770 ILCS 23/10(a) (West 2004)) provides health care providers with "a lien upon all claims *** of the injured person." Section 10 then limits the amount of lien, stating: "The total amount of all liens under this Act, however, shall not exceed 40% of the verdict *** secured by or on behalf of the injured person on his or her claim." 770 ILCS 23/10(a) (West 2004). Providers then "share proportionate amounts" within this 40% limit. 770 ILCS 23/10(c) (West 2004). However, no "category of *** health care provider (such as hospitals) *** may receive more than one-third of the verdict." 770 ILCS 23/10(c) (West 2004).

¶ 60    I realize that Stroger Hospital treats the poor and the indigent and can have great difficulty in enforcing its liens to the detriment of all of the citizens of Cook County. However, it is the job of the legislature to pass a law that will protect the hospital that is not against public policy and existing law. I hope that the legislature will take another look at this statute and change its wording limiting recovery only to the medical expense portion of any itemized verdict and judgment. I find no problem for the lien to attach to any settlement or non-itemized verdict.

¶ 61    JUSTICE LAMPKIN, dissenting.

¶ 62    I disagree with the majority's conclusions that: the County failed to provide a sufficiently complete record on appeal and this court may presume that the mother of Akeem Manago, the injured minor, was a plaintiff in this matter (*supra* ¶ 7 n.4); the County does not have a lien under the Act because Akeem's mother did not assign her cause of action for medical expenses to Akeem (*supra* ¶¶ 1, 47); the Act limits the creation of liens to causes of action specifically seeking medical expenses (*supra* ¶ 48, but see the special concurrence of Justice Gordon, *supra* ¶¶ 55-56);[19] and enforcement of a lien under the Act on an unemancipated minor's award conflicts with the rule that a cause of action to recover medical expenses belongs to the parents and not the child (*supra* ¶ 45).

---

[19] The author of the opinion states that "*we* further interpret the language of the Act to limit the creation of a lien to claims or causes of action seeking medical expenses" and "*we* interpret the Act to mean that the hospital lien can only attach to an award of medical expenses." (Emphasis added.) *Supra* ¶ 48. Nevertheless, this proposition seems to lack majority support because the author of the special concurrence emphasizes that it is improper to read into the plain language of the Act the limitation that "the lien is enforceable only as to the medical recovery of the injured party." Supra ¶ 55.

¶ 63    I would find that the hospital has a valid lien and Akeem's mother is estopped from further claim against the defendant tortfeasors for medical expenses where she had the right to recover medical expenses incurred by Akeem, brought suit on Akeem's behalf as next friend, alleged that medical expenses were incurred as a result of Akeem's injury, and testified on Akeem's behalf, and where plaintiff Akeem did not appeal the trial court's judgment denying recovery for the medical expenses that had been stipulated to by the parties at the trial. I would reverse the trial court's ruling granting the motion to strike the hospital's lien, and remand the cause to the trial court to adjudicate the hospital's lien against the $200,000 judgment awarded in Akeem's personal injury case.

¶ 64    In 2005, plaintiff Akeem sustained personal injuries while riding on top of a moving elevator when he was a minor and an invitee on the property of a defendant tortfeasor. The County's hospital treated Akeem's injuries, which resulted in a $79,512.53 hospital bill that has not been paid. Meanwhile, Akeem, by his mother and next friend, sued the defendant tortfeasors (the property owner, the property management company, and the company hired to provide elevator maintenance) for damages for Akeem's personal injuries and reimbursement of his medical expenses. In 2009, the County served on the parties, pursuant to the Act, the hospital's lien notice for its unpaid medical services.

¶ 65    In 2011, the bench trial commenced without a court reporter, and the County did not participate in or attend that trial. According to the record, Akeem's mother testified at the bench trial and the parties stipulated to the admission into evidence of the medical bills she was given for Akeem's treatment at the County's hospital and the amounts of those bills. According to the trial court's December 7, 2011 written order, the "parties worked out an arrangement by which some evidence was adduced through: live testimony, stipulation, and by way of the reading of

29

that testimony by the Court outside the presence of the lawyers." Thereafter, the trial court awarded Akeem, who was 50% responsible for his own injuries, a $200,000 judgment for his scarring, pain and suffering, and loss of a normal life. However, despite the parties' stipulation to the medical bills, the trial court found that "Plaintiffs [*sic*] adduced no testimony as to who was responsible to pay for these medical bills," and concluded that Akeem's mother had "failed to establish that she had any expectation that she had to pay any of the $79,512.53 hospital bill back to [the County's hospital]. The trial court denied any recovery for medical bills and retained jurisdiction for purposes of any liens. Plaintiff's counsel informed the County's counsel of the trial court's ruling.

¶ 66    In January 2012, plaintiff moved the trial court to reconsider its ruling, arguing, *inter alia*, that it was error to deny an award for medical expenses because the parties had stipulated to the introduction into evidence of the itemized medical bills and the law mandates that parents are liable for the medical expenses of their children. Also in January 2012, plaintiff moved to strike and extinguish the hospital's lien, arguing that no lien for medical services attached to Akeem's judgment because parents are responsible for payment of their children's medical expenses and the trial court did not award Akeem's mother any damages for Akeem's medical expenses. The County filed its response, objecting to plaintiff's petition to strike and extinguish the hospital's lien.

¶ 67    At the hearing on plaintiff's motion to reconsider and motion to strike the lien, the trial court faulted the County for not intervening during the trial to present evidence to protect its lien and complained that "not a single bit of evidence was adduced saying that the mother was responsible to pay [the medical bills]." The County responded that its lien was properly created in accordance with the Act, the County had no duty to intervene in the personal injury litigation,

and the settled law in Illinois provided that a hospital's lien was enforceable against a minor's personal injury judgment.

¶ 68    The trial court denied plaintiff's motion for reconsideration and granted plaintiff's motion to strike and extinguish the hospital's lien. Thereafter, the trial court issued an agreed order for plaintiff's counsel to escrow $66,666.67 in lien funds. The County timely appealed the order striking and extinguishing the hospital's lien, but plaintiff did not appeal the denial of his motion for reconsideration. The County asks this court to reverse the order striking and extinguishing its lien and order that the hospital be paid the sum of $66,666.66, which is one-third of the $200,000 judgment.

¶ 69    The Act creates a statutory lien that compensates health care professionals or providers for reasonable charges for any treatment, care or maintenance services rendered to an injured person. 770 ILCS 23/10 (West 2008). By ensuring that health care professionals and providers are compensated for their services, statutes like the Act lessen the burden on hospitals and other medical providers imposed by nonpaying accident cases and induce hospitals to receive or quickly treat patients injured in accidents without first considering whether those patients will be able to pay the medical bills incurred. *In re Estate of Cooper*, 125 Ill. 2d 363, 368-69 (1988); 41 C.J.S. *Hospitals* § 22 (2016). Even though the Act has remedial features, the application of the Act in the instant case could be deemed in derogation of the common-law doctrine of necessaries, under which a parent is liable to provide necessary goods and services for his or her child (see *Hunt v. Thompson*, 4 Ill. 179, 180 (1840)); accordingly, the Act should be strictly construed when determining whether minors come within its operation (see *In re W.W.*, 97 Ill. 2d 53, 57 (1983) (the State is not allowed to recover appeal costs incurred in juvenile adjudications of guilt)).

¶ 70      The requisites for the creation of a valid lien under the Act are the rendering of any services in the treatment of an injured person and service of the notice of a lien in accordance with the Act. 770 ILCS 23/10 (West 2008). The lien claimant has a continuing obligation under the Act to permit parties in litigation related to the injuries to examine the injured person's records and to furnish statements regarding the injuries and treatment, and the lien shall immediately become null and void if the lien claimant fails or refuses to give or file a statement regarding the injuries or treatment. 770 ILCS 23/25 (West 2008). The lien is perfected by proper service of notice, provided the lien claimant complies with any requests to furnish statements regarding the injured person's injuries and treatment, and attaches after service to any recovery secured by or on behalf of the injured person. 770 ILCS 23/10, 20, 25 (West 2008); *In re Estate of Cooper*, 125 Ill. 2d at 369. The plain language of the Act empowers the trial court not to reduce the lien but rather to determine if the statutory requirements for a valid lien have been met and, if so, to enforce the lien subject to statutory limits on the amount of recovery. 770 ILCS 23/30 (West 2008); *In re Estate of Poole*, 26 Ill. 2d 443, 445 (1962). The statutory limits on the amount of recovery may be waived or reduced only by the lienholder. 770 ILCS 23/10(c) (West 2008).

¶ 71      Notwithstanding the strict construction of the Act in the instant case involving a minor, the plain and unambiguous language of the Act establishes that the legislature defined the scope of this lien very broadly. Specifically, the legislature has given the health care professional or provider "a lien upon *all claims and causes of action* of the injured person." (Emphasis added.) 770 ILCS 23/10 (West 2008). Moreover, the lien attaches to a certain percentage of a broad category of property, *i.e.*, "*any* verdict, judgment, award, settlement, or compromise secured by or on behalf of the injured person." (Emphasis added.) 770 ILCS 23/20 (West 2008).

Significantly, the Illinois legislature did not include any language in the Act that disallows a hospital lien or reduces that lien when the medical services have been provided to a minor; if the legislature had intended such a result, it would have expressly provided language for it in the statute. *Hines v. Department of Public Aid*, 221 Ill. 2d 222, 230 (2008) (court "may not annex new provisions or substitute different ones, or read into the statute exceptions, limitations, or conditions which the legislature did not express); *Meier v. Olivero*, 279 Ill. App. 3d 630, 632-33 (1996) ("A legislative enactment that prescribes the conditions essential to the existence and preservation of a statutory lien may not be disregarded.").

¶ 72    Clearly, the legislature's intent was to allow hospital liens on minors' recoveries from judgments or settlements for their injuries because the entire Act is devoid of any language limiting the recovery of minors. In fact, the Act expressly states that only the lienholder can reduce the lien. 770 ILCS 23/10(c) (West 2008) ("The statutory limitations under this Section may be waived or otherwise reduced only by the lienholder."). Furthermore, there is no provision in the Act limiting the attachment of the lien to a recovery designated as pertaining specifically to medical expenses, and it is not the province of the courts to inject provisions not found in a statute. Consequently, I cannot agree with the majority's position that the hospital's perfected lien cannot attach to the $200,000 judgment Akeem obtained against the tortfeasors that caused his injuries.

¶ 73    The general rule is that liens attach to a recovery for a minor even though the minor could not contract for the services to create the underlying debt. *In re Estate of Cooper*, 125 Ill. 2d at 369 (allowing a hospital lien against a minor's personal injury settlement); *In re Estate of McMillan*, 115 Ill. App. 3d 1022 (1983) (trial court erred in reducing the hospital's lien to less than one-third of the settlement proceeds collected by the estate of the minor injured in an auto

accident); *In re Estate of Enloe*, 109 Ill. App. 3d 1089, 1091 (1982) (the validity of a hospital's lien under the Act on the personal injury settlement of a minor was not dependent upon common-law theories concerning the existence of a valid underlying contract between the infant and the hospital); *cf. Richmond v. Caban*, 324 Ill. App. 3d 48, 53-54 (2001) (although a hospital lien may attach to a minor's personal injury settlement pursuant to the Act, the hold-harmless clause of the HMO agreement, which was mandated by statute, provided that the hospital had no recourse against the minor or the parents aside from two exceptions, so the lien was void unless it was filed to recover payment for one of those exceptions); *N.C. v. A.W.*, 305 Ill. App. 3d 773, 775 (1999) (a hospital may not assert lien rights in a minor's estate if the minor's insurer has already reimbursed the hospital for the medical services rendered); *In re Estate of Phillips*, 163 Ill. App. 3d 935, 938 (1987) (hospital's lien, which was filed after the court already had begun distributing the proceeds of the minor's personal injury settlement to medical creditors, was untimely and thus not perfected); accord *Commonwealth of Virginia v. Lee*, 387 S.E.2d 770 (Va. 1990); *Dade County v. Perez*, 237 So. 2d 781 (Fla. Dist. Ct. App. 1970); *Application of Charles S. Wilson Memorial Hospital v. Puskar*, 208 N.Y.S.2d 229 (N.Y. Sup. Ct. 1960).

¶ 74     The family expense statute (750 ILCS 65/15 (West 2008)), is an alternative rather than an exclusive remedy for a hospital, which may still assert a lien under the Act against the minor's personal injury settlement or judgment. *In re Estate of Enloe*, 109 Ill. App. 3d at 1091-92. Pursuant to the family expense statute, medical expenses incurred on behalf of a minor child are family expenses and parents are liable for the medical expenses of their minor children. 750 ILCS 65/15(a)(1) (West 2008); *Cullotta v. Cullotta*, 287 Ill. App. 3d 967, 975 (1997). Accordingly, any cause of action against a tortfeasor to recover for medical expenses is that of the parent and not the child. *Graul v. Adrian*, 32 Ill. 2d 345, 347 (1965). However, where a cause

of action for personal injuries to a minor child is brought by the child's parent as next friend on behalf of the child, the parent may waive the right to recover the money expended for the child in paying medical expenses and allow the child to recover the same. *Fox v. Hopkins*, 343 Ill. App. 404, 411 (1951); see also *White v. Seitz*, 258 Ill. App. 318, 326 (1930), *rev'd on other grounds*, 342 Ill. 266 (1930).[20] Specifically, the actions of a parent in appearing as next friend in the lawsuit and testifying on the child's behalf serve to estop the parent from further claim against the defendant tortfeasor on account of such payments for medical expenses. *Fox*, 343 Ill. App. at 411 (father was estopped from recovery for medical expenses where he filed personal injury action as next friend on behalf of his daughter, alleged that medical expenses were incurred as a result of the automobile collision, and prosecuted the suit until the trial began); *White*, 258 Ill. App. at 326 (father was estopped from further claim against the defendant tortfeasor for medical expenses where he brought suit on behalf of his minor son as next friend, had the right to waive his right to recover the medical expenses incurred by the son in an automobile collision, and appeared as next friend in this suit and testified on his son's behalf).

¶ 75     Other jurisdictions also take the view that, in addition to formally assigning the right to recover medical expenses to the child, the parent's recovery of such expenses may be estopped in favor of the child where the parent brings the suit as next friend. See *Ellington v. Bradford*, 86

---

[20]     *White* is an appellate court decision prior to 1935 and thus is not binding authority because it predates an amendment to the Courts Act that conferred precedential authority to Illinois Appellate Court decisions. See *Graham v. White-Phillips Co.*, 296 U.S. 27, 31 (1935); *Chicago Title & Trust Co. v. Vance*, 175 Ill. App. 3d 600, 606 (1988) (citing Ill. Rev. Stat. 1935, ch. 37, ¶ 41). Nevertheless, the holding and rationale of *White* is consistent with *Fox*, which was issued after 1935.

S.E.2d 925, 926-27 (N.C. 1955) (a hospital's lien may attach to a minor's recovery when the parent, as next friend, has brought and prosecuted an action for the minor child and claimed medical expenses as an element of the damages because that parent is deemed to have waived his individual right to recover those medical expense and is estopped from asserting them); *cf.* *Abbondola v. Kawecki*, 29 N.Y.S.2d 530, 531 (1941) (where the minor plaintiff did not claim medical expenses and recovered a judgment for personal injuries, and the father—in his own action—recovered a judgment for medical expenses incurred, and the hospital had an equitable lien on the father's recovery by virtue of an assignment by the father, the hospital could not also recover its statutory lien for medical expenses against the minor).

¶ 76    According to the record, the caption and text of the second amended complaint establish that Akeem's mother brought suit only on behalf of Akeem, a minor, as next friend. Furthermore, that complaint includes within Akeem's claim for damages for his injuries the statement that Akeem's mother incurred medical expenses on his behalf. Despite this clear indication in the record concerning the proper identity of the plaintiff in this case, the trial judge erroneously referred in his written decision to Akeem's mother as a plaintiff who brought her own count and claim for medical expenses. Although the bench trial commenced without a court reporter and the record on appeal does not include a bystander's report of the trial, the absence of a transcript or bystander's report does not raise any doubts concerning the proper parties in this case, Akeem's claim for damages for his injuries and reimbursement for medical expenses, or the validity of the hospital's perfected lien. Thus, I disagree with the majority's conclusions that the County failed to provide a sufficiently complete record to support its claim of error and this court may presume that Akeem's mother was an additional plaintiff who brought her own count and claim for medical expenses. *Supra* ¶ 7 n.4. The record also establishes that Akeem's mother

testified on his behalf, and the parties stipulated to the admission into evidence of the medical bills she was given for Akeem's treatment at the hospital and the amounts of those bills. See *Wills v. Foster*, 229 Ill. 2d 393, 420 (2008) (by stipulating to the admission into evidence of the amounts billed by medical providers and failing to offer any objection, the tortfeasor relieved the injured plaintiff motorist of the burden of establishing the reasonableness of the amounts billed).

¶ 77    Under these circumstances, the County was entitled to enforcement of its lien under the Act on Akeem's recovery in his personal injury cause of action. When an injured person recovers any damages for his injury, the Act permits enforcement of a lien in favor of any health care professional or provider who treated the injuries for which the damages were recovered. Ordinarily, Akeem, as a minor plaintiff, would not be permitted to claim medical expenses in an action against the tortfeasors because the liability for a minor's medical expenses is the liability of the parent. However, because the Act provides a rather extraordinary remedy in derogation of the common law, it is only in certain circumstances that the recovery of a minor would be subject to a hospital's lien, such as when, for some reason, a parent cannot or will not claim those expenses from one who has tortiously injured the child. See *Fox*, 343 Ill. App. at 411; *White*, 258 Ill. App. at 326; *Ellington*, 86 S.E.2d at 926-27. Here, the hospital's lien may attach to Akeem's recovery because his mother is estopped from claiming those medical expenses against the tortfeasors where she brought the suit on behalf of Akeem as next friend, alleged the medical expenses were incurred as a result of the tortfeasors' negligence, and testified on Akeem's behalf. *Id*. Moreover, Akeem has failed to appeal the trial court's erroneous denial of relief for the stipulated medical expenses.

¶ 78    Because the Act allows a hospital lienholder to recover unpaid medical expenses from all claims the injured patient has against the tortfeasors, it would be illogical to conclude that a

perfected hospital lien should not be applied against the proceeds of the minor injured plaintiff's personal injury judgment. The majority's interpretation of the Act leaves hospitals at the mercy of the parents or guardians who might or might not, as they saw fit, assert a cause of action for medical expenses. See *Charles S. Wilson Memorial Hospital*, 208 N.Y.S.2d at 231. Moreover, the hospital's perfected statutory lien cannot be eliminated simply by the trial court's erroneous denial of an award to the plaintiff for stipulated medical expenses and the plaintiff's subsequent failure to appeal that erroneous ruling. Under the circumstances of this case, it would be unconscionable to permit Akeem to receive free medical care for his injuries and recover damages from the tortfeasors for those injuries without any setoff for the medical expenses directly related to those injuries. To do so would violate the explicit provisions of the Act, deprive a nonprofit, public hospital of much needed funding, and force the hospital to expend further resources to attempt to recover the medical expenses from the parent.

¶ 79    For the foregoing reasons, I respectfully dissent from the majority's judgment affirming the judgment of the circuit court.